UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CONNIE M LOVE | * | CIVIL ACTION |
| versus | * | NO. 07-5970 |
| MOTIVA ENTERPRISES, LLC | * | SECTION "J" |
| | * | MAGISTRATE 4 |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

Defendant, Motiva Enterprises LLC ("Motiva"), submits this memorandum in support of

its motion for summary judgment dismissing the captioned action.

## I.    LOVE'S CLAIMS

Plaintiff, Connie M. Love ("Love"), is an employee of Motiva.  She has filed this suit

under Title VII of the Civil Rights Act of 1964 alleging that she was subjected to same-sex,

hostile environment sexual harassment by Jeanne Sirey ("Sirey"), a female co-employee, and

that Motiva retaliated against her after she complained of the alleged harassment.[1]

## II.    SUMMARY OF MOTIVA'S ARGUMENTS

Motiva is entitled to summary judgment dismissing Love's same-sex harassment claim

for the following reasons, each of which is dispositive.  First, Love cannot show that the alleged

---

[1]    Love has filed a separate lawsuit against Sirey in state court, and that suit is based on the same
acts of harassment alleged in this suit.

harassment was based on sex, the primary requirement for a claim under Title VII.  Sirey exhibited rude and disrespectful behavior to male employees as well as Love, and the nature of the alleged harassment demonstrates that Sirey's true intent was to bully and annoy Love, not to make any sexual advance toward her.  Second, the alleged harassment was not sufficiently severe or pervasive to establish an actionable claim.  Third, Motiva took prompt remedial action reasonably calculated to stop the alleged harassment.

Motiva is also entitled to summary judgment dismissing Love's retaliation claim because none of the alleged retaliatory conduct constitutes an adverse employment action or was prompted by a retaliatory motive.

## III.     LOVE'S EMPLOYMENT HISTORY

Love is currently employed by Motiva.[2]  She has not performed any work for Motiva since September 11, 2006, because she has been on disability leave since that date.  However, her employment has never been terminated, and she is eligible to return to work in the position she held as of September 11, 2006, when she is released by her physicians to do so.[3]

Love began her employment with Motiva at the company's Norco refinery in May of 2000.[4]  The primary business of the refinery is to refine crude oil into consumable hydrocarbon products.  The majority of employees at the refinery are operators who operate production processes in various units.  Love has worked in multiple units at the refinery but was employed in the Coker unit at all times relevant to this lawsuit.  She has missed substantial periods of work

---

[2]     Love Deposition, attached hereto as Exhibit 1, at 72:11-22; Trimble Affidavit, attached hereto as Exhibit 2, at ¶ 3.

[3]     Love Deposition at 72:11-22; Trimble Affidavit at ¶ 3 and ¶ 6.

[4]     Love Deposition at 61:8-13.

time for medical reasons including maternity leave, rotator cuff surgery, gastric bypass surgery and follow-up intestinal surgery, and back problems.[5]

Love was on leave for the gastric bypass and intestinal surgeries from October 2005 till mid-January 2006. During these surgeries, Love's physicians discovered multiple herniated discs in her back. When she returned to work, Love was under physical restrictions imposed by her physicians. Motiva accommodated Love's restrictions by moving her from outside operator work in the Coker unit, which has greater physical demands, to inside transitional duty[6] work as a Board Operator who monitors processes via computer screen and directs the work of outside operators to open or close valves or institute anti-foam measures as needed.[7] As a Board Operator in the Coker unit, Love reported to lower level supervisors known as Core Team Leaders and to their supervisor, the Production Assurance Manager, Anthony Pastor ("Pastor").[8]

On August 17, 2006, while Love was working as a Board Operator, an alarm indicated that the foam level in the Coker unit was elevating.[9] Love's responsibility under Motiva's procedures was to acknowledge the alarm and notify the appropriate outside operator to take steps to reduce the foam level.[10] Failure to respond to such an alarm could cause the entire Coker unit to be down for repairs for a considerable amount of time.[11]

---

[5]     Love Deposition at 232:21-233:15.

[6]     According to Motiva policies, the term "transitional duty" is used rather than "light duty."

[7]     Pastor Affidavit, attached hereto as Exhibit 3, at ¶ 4; Rutter Affidavit, attached hereto as Exhibit 4, at ¶ 5.

[8]     Pastor Affidavit at ¶ 5.

[9]     Love Deposition at 129:1-139:25; Love's Deposition Exhibit 11; Rutter Affidavit at ¶ 13; Pastor Affidavit at ¶ 8.

[10]     Love Deposition at 130:18-131:3; Pastor Affidavit at ¶ 8.

[11]     Love Deposition at 139:19-25; Pastor Affidavit at ¶ 8.

After conducting an investigation into the August 17 alarm incident, management concluded that Love did not perform as she was supposed to:  she acknowledged the alarm but did not notify the outside operator to take the necessary action to reduce the foam level.[12] Although higher levels of formal discipline had been issued in similar situations involving other Motiva employees, Pastor issued Love an oral reminder, [13] the lowest level of formal discipline,[14] for her improper handling of the alarm.  Pastor and Jaunty Rutter, Motiva's Industrial Relations Manager, gave Love the oral reminder and discussed it with her during a meeting on September 6, 2006, where Love's union representative was present.[15]  The oral reminder was documented in Love's Personal Development Log ("PDL").[16]

Love was involved in a second alarm incident on August 28, 2006.[17]  At that time, an alarm indicated an over-pressuring event.  Love failed to take the necessary steps to reduce the pressure, and another employee had to address this serious problem.[18]  If the other employee had not taken action, equipment could have been significantly damaged and employees could have

---

[12]     Love Deposition at 133:3-14; Pastor Affidavit at ¶ 8.

[13]     Love Deposition at 128:23-130:17; Love Deposition Exhibit 11; Pastor Affidavit at ¶ 9.

[14]     Rutter Affidavit at ¶ 12.  Motiva has three levels of formal discipline for hourly, represented employees at the Norco refinery such as Love and Sirey.  Id. at ¶ 6.  A Level 1 Reminder (typically referred to as an "Oral Reminder"), is a formal, documented discussion between a supervisor and an employee and remains active in the employee's personnel file for twelve months.  Id.  Two higher levels of formal discipline, which consist of a Level 2 Reminder (referred to as a "Written Reminder") and a Decision Making Leave ("DML"), are issued for more serious conduct and remain in the employee's personnel folder for longer periods of time. Id.

[15]     Love Deposition at 128:23-129:14.

[16]     See Love's PDL, attached as Exhibit A to Rutter Affidavit.  Each operating employee has an individual Personnel Development Log (or "PDL"), and any formal discipline issued to an employee is documented in that employee's PDL.  Rutter Affidavit at ¶ 9.  The PDL is also used to document coaching and counseling sessions with regard to work performance, conduct, and attendance as well as positive recognition.  Id.

[17]     Pastor Affidavit at ¶ ¶ 11-12.

[18]     Pastor Affidavit at ¶ 11.

been injured.  Pastor commenced an investigation of this second alarm incident, and company records confirmed that Love did not properly respond to the alarm.  Management was in the process of determining appropriate discipline for this second alarm incident as of the time of the meeting on September 6 concerning the first alarm incident.  No final discipline decision had been reached, but Pastor had decided that he could not safely permit Love to continue to work as a Board Operator in light of the two incidents.[19]

During the September 6 meeting, Pastor advised Love that she could no longer work as a Board Operator but would be given the opportunity to study and qualify for a utility operator position.[20]  Before Love could complete the qualification process, Motiva determined that the utility operator position exceeded the physical restrictions imposed by Love's physicians. Having no other work that Love could perform within her physical restrictions, management told Love that she could commence disability leave with pay until she was released to return to full duty.[21]

September 11, 2006, is the last date Love worked at the refinery.  Since that time, Motiva's disability case manager has not received any information from Love's physician indicating when Love will be able to return to work.[22]  Pursuant to the company's disability pay policy, Love received full pay from September 12, 2006, until October 18, 2006, and half-pay from October 19, 2006, until March 27, 2007.[23]  She applied for Social Security Disability benefits and received them effective March 2007.  She continues to receive these disability

---

[19]     Pastor Affidavit at ¶¶ 11-12.

[20]     Id. at ¶¶ 11-13; Love Deposition at 158:16-19.

[21]     Id. at ¶¶ 13-15.

[22]     Trimble Affidavit at ¶ 7.

[23]     Love Deposition at 49:10-17; Trimble Affidavit at ¶ 5.

benefits today.[24]  Love testified that:  1) she has been physically unable to work since September 11, 2006; 2) her physician, Dr. Wendy Jamison, told her she is unable to work because of herniated discs; and 3) Dr. Jamison has said that she cannot perform **any** jobs.[25]

## IV.    THE ALLEGED HARASSMENT

The alleged harassment began in March of 2005, after Sirey was transferred to the Coker unit.  Although Sirey and Love both worked in the same unit, they were assigned to different shifts until June of 2006, when Love was moved to Sirey's shift.[26]  Even when Sirey and Love worked on the same shift, they typically did not work in the same area of the unit.[27]

Love alleges that Sirey harassed her in the following ways:

- Love and Sirey had an ongoing disagreement over the locking of the ladies' locker room / dressing area from March of 2005 to June of 2005.[28]  According to Love, Sirey locked her out of these facilities on numerous occasions.[29]  Sirey also allegedly knocked on the shower and asked "Who is in here?  Who is in here?" while Love was showering, but never opened the shower door.[30]

- Love alleges that on one occasion in March of 2005, Sirey came in to the locker room where Love was changing and made what Love acknowledges were "derogatory comments about [her] appearance."[31]  Sirey also allegedly ran her

---

[24]    Love Deposition at 52:3-53:11; Love Deposition Exhibit 6.

[25]    Love Deposition at 47:19-50:19; 51:21-23; Love Deposition Exhibit 4.

[26]    Id. at 161:16-162:2; 164:4-7.

[27]    Id. at 162:13-163:18.

[28]    Id. at 166:23-170:24.

[29]    Love Deposition at 169:12-20.

[30]    Id.  at 169:25-170:4; 211:7-16.

[31]    Love Deposition at 173:10-176:1; 177:11-22.  The alleged comments include comments that Love is a "sorry excuse for a woman," "stupid bitch," "fat," and "disgusting."  Id. at 175:18-23.

right hand underneath Love's bra strap and along the waistband of her underwear, but did not touch Love's breasts or her private parts.[32]  There were no witnesses to this alleged incident.[33]

- On one occasion in April of 2005, Sirey allegedly tried to massage Love's clothed shoulders and back.[34]  There are no known witnesses to this alleged incident.[35]

- On one occasion in January of 2006, when Love  returned to work following her gastric bypass surgery and loss of 86 pounds, Sirey allegedly tried to hug Love and made comments to Love such as, "[i]t's been so long since I've seen you," and "[y]ou look so good."[36]   There were no witnesses to this alleged incident.

- Sirey allegedly came up behind Love while she was working in the control room, and rubbed her body against Love while trying to reach for materials stored on a shelf above the area where Love sat.[37]  According to Love, this occurred at least 20 times from January of 2006 to March of 2006.[38]

- Sirey allegedly followed Love around at various Motiva functions and either stood very close to Love or touched Love's arm.[39]  Love could not give specific dates of when this conduct occurred.[40]

---

[32]     Love Deposition at174:6-24; 175:13-15.

[33]     Id. at 178:3-5.

[34]     Id. at 178:10-180:4.

[35]     Id. at 179:4-6.

[36]     Id. at 183:19-186:16.

[37]     Love Deposition at 180:15-181:15.

[38]     Id. at 183:13-15; 182:6-9.

[39]     Id. at 187:3-24.

[40]     Id. at 188:14-25.

- Beginning in March of 2006, Sirey would allegedly go to the control room where Love was working and stare at Love from a dark area of the room.[41]

- Sirey licked her lips at Love on one occasion while making comments such as "Just be aware.  Always look for me over your shoulder" and "you think you're a woman."[42]  There were no witnesses to this alleged incident.

- On September, 11, 2006, her last day of work, Love was changing in the lady's locker room and Sirey allegedly came in and told her, "Oh God, that is a sight to see," and "Boy is that a sight to see walking through this door."[43]  There were no witnesses to this alleged incident.[44]

Love admits that Sirey never touched her breasts or her private parts.  Love further admits that Sirey never asked her to engage in sexual activity, never told her that she wanted to have sex with her, and never told her that she thought about having sex with her.[45]  There is no evidence that Sirey is a lesbian or bisexual.[46]

Love alleges that she contemporaneously reported all of the above described conduct to numerous individuals at Motiva, including her Core Team Leaders and the industrial relations / human resources staff, but that her complaints were not addressed.[47]  Love admits, however, that after allegedly complaining to Pattie Teague ("Teague"), a former human resources

---

[41]     Id. at 203:16-24.

[42]     Love Deposition at 253:25-254:13.

[43]     Id. at 149:20-150:12.

[44]     Id. at 150:2-4.

[45]     Love Deposition at 165:18 – 166:1.

[46]     When Love was asked whether she thought Sirey was a lesbian, she responded that she did not know.  Love Deposition at 165:14-15.

representative at Motiva, about the instance of physical contact in March of 2005, Teague met with her within five minutes to discuss the incident.[48]  According to Love, Teague told her that she would talk to Sirey and conduct a formal investigation of the incident.[49]

Sirey's personnel development log confirms that Sirey was counseled on four separate occasions for her rude and disrespectful behavior toward various Motiva employees and contractors – most of whom are male.[50]  On June 29, 2006, after an investigation into complaints about Sirey's conduct from various men and Love, Sirey was issued a Written Reminder for a pattern of disrespectful behavior.[51]  Motiva determined that Sirey's conduct was not harassment prohibited by employment discrimination statutes such as Title VII, but disciplined her for it nevertheless.[52]

## V.     LEGAL ARGUMENT

Rule 56 of the Federal Rules of Civil Procedure **requires** the entry of summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[53]  The moving party need only alert the court that there is an absence of evidence in support of one or more elements essential to the plaintiff's claims.[54]

---

[47]     Love Deposition at 188:14-15; 195:12-196:1, 197:5-11; 197:15-21.  According to Jaunty Rutter, the refinery's Industrial Relations Manager, Love did not report any claims of harassment to him until June 19, 2006.  Rutter affidavit at ¶ 18.

[48]     Love Deposition at 198:15-25.

[49]     Id. at 199:4-11.  The findings of any such investigation would not have been shared with Love, as Motiva's practice is to keep employee discipline  information confidential.  Rutter affidavit at ¶ 21.

[50]     Sirey's PDL, attached as Exhibit B to Rutter Affidavit (entries dated 10/28/05, 12/01/05, 1/22/06, 4/22/06).

[51]     Rutter Affidavit at ¶ 20; Love Deposition at 202:18-203:6; Love Deposition Exhibit 15.

[52]     Rutter Affidavit at ¶ 20.

[53]     Overseas Inns S.A.P.A. v. U.S., 911 F.2d 1146, 1148 (5th Cir. 1990).

[54]     Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir. 1993); Ocean Energy II v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th Cir. 1989).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[55]  The non-moving party cannot rely on argument or naked assertions to withstand a motion for summary judgment.[56]  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment should be granted.[57]  The non-moving party's failure of proof concerning an essential element renders all other facts immaterial.[58]

Under these guidelines, Motiva is entitled to summary judgment dismissing both of Love's claims.

### A.    The Undisputed Evidence Negates Love's Ability to Prove Sexual Harassment.

To succeed on her claim of same-sex, hostile work environment harassment,[59] Love must prove that she belongs to a protected group, she was subjected to unwelcome harassment, the harassment was based upon her gender, and the harassment affected a term, condition, or privilege of her employment.[60]  Harassment must be sufficiently severe or pervasive in order to

---

[55]    Engstrom v. First Nat'l Bank, 47 F.3d 1459, 1462 (5th Cir. 1995); see also Celotex, 477 U.S. at 423; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).

[56]    Herrera v. Millsap, 862 F.2d 1157, 1160 (5th Cir. 1989); Woods v. Federal Home Loan Bank Bd., 826 F.2d 1400, 1413-14 (5th Cir. 1987).

[57]    Celotex, 477 U.S. at 322, Burden v. Gen. Dynamics Corp., 60 F.3d 213, 216 (5th Cir. 1995).

[58]    Celotex, 477 U.S. at 322.

[59]    Because Love does not allege any tangible employment action taken against her by Motiva on the basis of sex, Love's claim is of necessity one for an alleged hostile work environment.  See e.g., Oncale, 523 U.S. 75, 118 S.Ct. 998, 1001 (1998).

[60]    Watts v. Kroger Co., 170 F.3d 505, 509 (5th Cir. 1999).

affect a term, condition or privilege of employment.[61]  Because the alleged harassment was perpetrated by a co-worker, as opposed to a supervisor,[62] Love must also show that Motiva "knew or should have known about the harassment and failed to take prompt remedial action."[63]

Love's harassment claim suffers from multiple infirmities.  First, Love cannot show that she was treated differently based on sex.  The inability to make such a showing is fatal to a same-sex, sexual harassment claim.  Second, the acts upon which Love's claim of harassment is based, if assumed to have occurred, were not sufficiently severe or pervasive to create a hostile working environment.  Third, the undisputed facts establish that Motiva took action that was reasonably calculated to stop the offensive behavior and continued to do so until the situation was resolved.

### 1.    Love cannot establish that the offensive conduct was because of sex

When analyzing a Title VII claim alleging same-sex harassment, the Court must first decide if the alleged harasser's conduct constitutes sex discrimination.[64]  Even if the alleged harassment created a hostile environment, it does not violate Title VII unless it was discriminatory on the basis of sex.[65]  Fifth Circuit jurisprudence establishes that Love may meet her initial burden of proof in one of three ways:  (1) by showing that Sirey was motivated by a general hostility to women in the workplace; (2) by offering direct comparative evidence to show how Sirey treated members of both sexes in a mixed-sex workplace; or (3) by showing that Sirey made "explicit or implicit proposals of sexual activity" **and** providing "credible evidence" that

---

[61]     Id.

[62]     Love admits that Sirey was a co-worker and not her supervisor.  Love Deposition at 160:12-18.

[63]     Woods v. Delta Beverage Group, Inc., 274 F.3d 295, 298 & n. 2 (5th Cir. 2001).

[64]     La Day v. Catalyst Technology, Inc., 302 F.3d 474, 478 (quoting Oncale v. Sundowner Offshore Svcs., Inc., 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)).

[65]     Id.

Sirey was homosexual.[66]  Whichever evidentiary route Love chooses, "she must actually prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination **because of sex**."[67]

Love cannot establish that Sirey's conduct was "motivated by a general hostility to the presence of members of the same sex in the workplace" or that Sirey treated female workers differently than other employees because of their sex.  The undisputed evidence establishes that Sirey was rude and disrespectful to men as she was to Love.[68]  Love admits that she remembers male employees complaining about Sirey's behavior towards them.[69]  Love also admits that Sirey told her that she was going to make the male employees in the coke room miserable.[70]  Accordingly, Love cannot establish her same-sex harassment claim under either the first or second method.

Love's harassment claim also fails under the third method as the undisputed facts show that Love has no "credible evidence" that Sirey is homosexual or that Sirey made sexual advances.[71]  Love has no evidence that Sirey is a lesbian or bisexual.[72]  Love admits that she does not know of any other employee who claims to have experienced same-sex harassment by Sirey.[73]  She also admits that Sirey never asked her to engage in sexual activity, never told her that she wanted to have sex with her, and never told her that she thought about having sex with

---

[66]     Id.

[67]     Oncale, 523 U.S. at 1002 (emphasis added).

[68]     See Sirey's PDL, attached as Exhibit B to Rutter Affidavit (entries dated 10/28/05, 12/01/05, 1/22/06, 4/22/06).

[69]     Love Deposition at 171:24-172:8.

[70]     Id. at 172:9-18

[71]     La Day, 302 F.3d at 480.

[72]     Love Deposition at 165:11-15.

[73]     Love Deposition at 166:5-8.

her.[74]  The evidence establishes that Sirey's behavior was like that of a school-yard bully, not someone who sought sexual contact with Love.[75]  Love's allegations that Sirey locked her out of the woman's restroom/locker room on numerous occasions, stared at her from a dark corner of the room where Love worked, and made cryptic comments about being "aware" and "looking over her shoulder" hardly indicate that Sirey desired sexual contact with Love.[76]

Love emphasizes that on one occasion Sirey licked her lips in a manner that Love perceived as sexual and that Sirey once touched parts of her underwear not adjacent to her private parts.[77]  However, the circumstances demonstrate that in both instances Sirey's intent was to humiliate Love, not to flirt with her.  Love admits that during both of these incidents, Sirey made derogatory comments about Love's appearance.[78]

---

[74]     Love Deposition at 165:18-166:1.

[75]     Kreamer v. Henry's Marine, 2004 WL 2297459, at * 6 (E.D. La. 2004) (refusing to consider harasser's conduct in isolation and finding that "plaintiff's deposition testimony and the summary judgment evidence, as a whole," revealed that the harasser intended to humiliate plaintiff for reasons unrelated to sexual interest).  Compare La Day, 302 F.3d at 480 (determining that harasser's alleged remark that he was jealous of plaintiff's girlfriend combined with alleged poking of plaintiff's anus was credible evidence that harasser was homosexual and that harasser was making sexual advances).

[76]     Compare Adeshile v. Metro Transpit Authority of Harris County, 2008 WL 112103, at *5 (S.D. Tex. 2008) (finding that alleged stalking of plaintiff by harasser and instance where harasser allegedly told plaintiff that she was "going to get her" and not to "play her" did not indicate an expression of sexual interest but rather some "disapprobation of Plaintiff's conduct and possibly even hostility of an unknown origin).

[77]     Love Deposition at 174:6-10; 175:13-15; 254:1-12.  These allegations by no means establish an issue of fact regarding Sirey's intent to initiate sexual contact with Love.  See McCown v. St. John's Health Sys., Inc., 349 F.3d 540, 544 (8th Cir. 2003) (no title VII violation when male supervisor grabbed employee by waist and buttocks; ground his genitals against Plaintiff's buttocks in simulated intercourse; tried to stick shovel handle in plaintiff's anus; and made other lewd comments, because the behavior was intended to irritate and was not based on sex); Rene v. MGM Grand Hotel, Inc., 243 F.3d 1206, 1207 (9th Cir. 2001) (summary judgment upheld where Plaintiff was, among other things, grabbed in the crotch, poked in the anus, caressed, hugged, and forced to look at pictures of naked men having sex); EEOC v. Harbert-Yeargin, Inc., 266 F.3d 498, 506 (6th Cir. 2001) (co-worker's grabbing and patting of genitals or buttocks was not gender discrimination under Title VII).

[78]     These comments included: "fat," "disgusting," "sorry excuse for a woman," and "look at you… you think you're a woman."  Love Deposition at 175:18-176:1; 254:6-13.

Same-sex harassment is unique, requiring clear distinctions between conduct based on sexual attraction and conduct involving horseplay, bullying, or personal animosity, none of which violate Title VII. The Fifth Circuit's requirement that a plaintiff provide credible evidence of the harasser's homosexuality and proposals of sexual activity set a high threshold which Love simply cannot meet.[79]

Since Motiva has established that Love cannot raise a genuine issue of fact as to whether Sirey's alleged conduct amounted to sexual discrimination as required by Oncale and its progeny, the Court's analysis should end here and Love's same-sex harassment claim should be dismissed. Out of an abundance of caution, however, Motiva will also show that Love cannot establish the remaining elements required to prove sexual harassment.

### 2.      Love cannot establish that Sirey's conduct was severe or pervasive

For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive environment.[80] "In determining whether an environment is 'hostile' or 'abusive' within the meaning of Title VII, courts look at the totality of the circumstances including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"[81] In addition, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so.[82] Simple teasing, offhand comments, and isolated incidents (unless

---

[79] LaDay, 302 F.3d at 480.

[80] Harvill v. Westward Communications, L.L.C., 433 F.3d 428, 434 (5th. Cir. 2005) (citations omitted).

[81] Id.

[82] Harvill, 433 F.3d at 434.

extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.[83]  Boorish and offensive comments must be severe in order to be actionable under Title VII.[84]  The Supreme Court has explained that Title VII is not a "general civility code for the American workplace."[85]  The alleged harassment must be viewed with "common sense, and appropriate sensitivity to social context" to determine whether it constitutes "conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive."[86]

Hostile environment harassment claims that have survived summary judgment in the Fifth Circuit involve allegations of multiple, egregious sexual threats or conduct that permeated the plaintiff's work environment.[87]  For example, in Waltman v. International Paper Co., the court found that the alleged harassment was severe and pervasive enough to survive summary judgment where the plaintiff alleged that the defendant's employees broadcasted obscenities about her over the public broadcasted system, and her supervisor urged her to have sex with a co-worker, pinched her buttocks with pliers and tried to put his hands in her back pockets.[88]  The plaintiff in Waltman also alleged that she received about thirty pornographic notes in her locker over the course of three years, and that many of the men would leave open their lockers containing pornographic pictures and used tampons.[89]  She testified that one employee told her she was a whore and "would get hurt if she did not keep her mouth shut," and that another

---

[83]     Farragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 2283 (1998) (citations omitted).

[84]     Shepherd v. Comptroller of Public Accounts, 168 F.3d 871, 874 (5th Cir. 1999).

[85]     Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 118 S.Ct. 998, 1001 (1998).

[86]     Oncale, 523 U.S. at 82, 118 S.Ct. at 1001.

[87]     See e.g., Harvil, 433 F.3d at 435-36 (the alleged harasser (1) grabbed the plaintiff and kissed her on the cheek, (2) touched her breasts numerous times, (3) popped rubber bands at her breasts and patted her on the buttocks numerous times, and (4) made comments about her sex life).

[88]     Waltman, 875 F.2d 468, 470 (5th Cir. 1989).

[89]     Id. at 471.

employee told her that he would "cut off her breast and shove it down her throat" and then dangled her from a stairwell, more than thirty feet from the floor.[90]   She alleged that eighty percent of the men at her workplace had made sexual comments to her with such comments being made at least once a week.[91]

Courts have repeatedly rejected claims of sexual harassment based on conduct more egregious than that alleged here.[92]   In Hockman v. Westward Communications, LLC, the court found that the plaintiff's claims were insufficient to withstand summary judgment where the plaintiff alleged that in the approximate year and a half she worked for Westward, she was harassed by her co-worker in the following ways:  (1) he made a remark to Hockman about another employee's body, (2) he slapped her on the behind with a newspaper, (3) he "grabbed or brushed" against Hockman's breasts and behind, (4) he held her cheeks and tried to kiss her, (5) he asked Hockman to come to the office early so that they could be alone, and (6) he stood in the door of the bathroom while she was washing her hands.[93]

As a matter of law, the alleged harassment in this case is not severe or pervasive enough to violate Title VII.  Interactions between Love and Sirey were necessarily limited since Sirey and Love did not typically work on the same shift, and when they did, they did not typically work in the same area.[94]  In addition, the physical contact at issue here is less egregious than that alleged in Hockman and other cases in which hostile environment claims did not survive

---

[90]   Id.

[91]   Id.

[92]   See e.g., Shepherd, 168 F.3d at 872 (plaintiff testified that her co-worker told her "your elbows are the same color as your nipples" and "you have big thighs" while he simulated looking under her dress, stood over her desk on several occasions and tried to look down her clothing, touched her arm on several occasions from her shoulder down to her wrist while standing beside her, and patted his lap on two occasions and remarked, "here's your seat.")

[93]   Hockman v. Westward Communications, LLC, 407 F.3d 317, 328 (5th Cir. 2004).

summary judgment.[95]   Unlike <u>Hockman</u>, none of the alleged physical contact at issue involves the touching of intimate areas of Love's body.   And, while the comments that Sirey allegedly made are admittedly boorish and offensive, they simply are not severe enough to be actionable under Title VII.[96]

### 3.    Motiva took prompt remedial action that was reasonably calculated to end the harassment

Assuming *arguendo* that Love's allegations establish sufficiently severe or pervasive conduct based upon sex, Love still cannot survive summary judgment because she cannot show that Motiva failed to take prompt remedial action.[97]   An employer's response to a harassment complaint must be reasonably calculated to end the harassment.[98]   Employers are **not** required to use the most serious form of discipline to punish an offending employee.[99]   Likewise, the

---

[94]    Love Deposition at 163:14-18.

[95]    See notes 92-93 and accompanying text.

[96]    Here, the comments at issue include comments such as "fat cow," "stupid bitch," and "sorry excuse for a woman."   Such comments are mere epithets or labels, which are not actionable under Title VII.   <u>See Shepherd</u>, 168 F.3d at 874 (holding that comments such as "your elbows are the same color as your nipples," and "you have big thighs," while boorish and offensive, were not severe and finding that each comment was the "equivalent of a mere utterance of an epithet that engenders offensive feelings").   <u>Compare Farpella-Crosby v. Horizon Health Care</u>, 97 F.3d 803, 805 (5th Cir, 1996) (harasser repeatedly told plaintiff that he "knew what she liked to do" because she had seven children and that she "must not have a television," commented in front of a group of co-workers that plaintiff did not know how to use condoms, frequently inquired about plaintiff's sexual activity, where she had been the night before while off duty, whether she had taken men home, and whether she had gotten any, and telling plaintiff that when she opened the door to her office "the smell of fish hits you in the face.   You shouldn't be doing that kind of thing at work;" the court found that defendant's comments were "frequent and severe enough to sustain a jury verdict for the plaintiff")

[97]    <u>Woods v. Delta Beverage Group, Inc.</u>, 274 F.3d at 298 & n. 2 (5th Cir. 2001).

[98]    <u>Kreamer v. Henry's Towing</u>, 2005 WL 2705802 at *8 (5th Cir. Oct. 21, 2005) (citing <u>Skidmore v. Precision Printing and Pkg., Inc.</u>, 188 F.3d 606, 616 (5th Cir. 1999)).

[99]    <u>Landgraf v. USI Film Products,</u> 968 F.2d 427, 430 (5th Cir. 1992).

employer's actions need not be immediate to be appropriate.[100]  The Fifth Circuit has stated that "[o]rdinarily, an organization requires time to respond to embarrassing, emotional and often litigation spawning claims of sexual harassment" and that one cannot reasonably demand that "the employer examine a charge of sexual harassment based on one side of the story, in a vacuum."[101]  In determining whether the employer's actions were remedial, courts have considered whether the offending behavior in fact ceased.[102]

Furthermore, no matter how offensive the behavior, Title VII requires remediation only when the employer knows or should know of **prohibited** harassment.[103]  This is particularly significant here, where even though Sirey's conduct may have been rude and obnoxious, it was not based on Love's gender and Motiva had no reason to believe that it was.

Motiva has a Harassment Policy that specifically prohibits all forms of harassment and Love is aware of that policy.[104]  Love alleges that Sirey inappropriately touched her underwear in the ladies' locker room/dressing facilities in March of 2005.  According to Love's testimony, Pattie Teague,[105] a Motiva human resources staff member, met with Love about the incident within five minutes of her alleged complaint.[106]  Teague told Love at that time that she would speak with Sirey and conduct a formal investigation.[107]  It is undisputed that the only witnesses

---

[100]    Dornhecker v. Malibu Grand Prix Cor., 828 F.2d 307, 309 (5th Cir. 1987) (observing that "since the demise of…dueling, society seldom has provided instantaneous redress for dishonorable conduct").

[101]    Dornhecker, 828 F.2d at 310-11.

[102]    Skidmore, 188 F.3d at 616 (internal citations omitted).

[103]    Nash v. Electrospace System, Inc., 9 F.3d 401, 404 (5th Cir. 1993) (emphasis added).

[104]    Love Deposition at 159:18-160:11; Love Deposition Exhibits 13 and 14.

[105]    Teague left her employment with Motiva in June 2005 and her current whereabouts are unknown. Rutter Affidavit at ¶ 23.

[106]    Love Deposition at 198:10-16.

[107]    Id. at 199:7-11.

to the two instances of alleged touching in 2005, one in the locker room in March 2005 and the back and shoulder rub in the lunchroom a couple of weeks later, were Love and Sirey.[108] Notwithstanding the "she said/she said" nature of Love's complaint, Motiva's response was apparently successful as there were no more incidents which could arguably qualify as sexually harassing conduct during the next eight months before Love went out on leave for her gastric bypass surgery in October of 2005.

Love alleges that Sirey's harassing behavior began again upon her return to work in January of 2006 after her gastric bypass surgery. Once again, however, Motiva responded. Sirey was counseled for rude and disrespectful behavior toward co-workers and contractors on January 22, 2006 and again on April 22, 2006.[109] Because a number of employees complained about Sirey's behavior toward them, Motiva conducted an investigation in the Spring of 2006.[110] As a result of the investigation, Motiva issued a Written Reminder issued to Sirey on June 29, 2006, for a pattern of disrespectful behavior towards a number of men and Love.[111] This formal discipline is reflected in Sirey's PDL.[112] There were no other instances of alleged harassment after this date which could arguably constitute a Title VII violation.[113]

---

[108]    Love Deposition at 178:3-5; 179-4-6.

[109]    See Sirey's PDL, attached as Exhibit B to Rutter Affidavit.

[110]    Trimble Affidavit at ¶ 9; Rutter Affidavit at ¶ 17.

[111]    Rutter Affidavit at ¶ 20; Written Reminder Issued to Jeanne Sirey, attached as Exhibit E to Rutter Affidavit. See also Love Deposition at 202:18-203:6; Love Deposition Exhibit 15.

[112]    See Sirey's PDL, attached as Exhibit B to Rutter Affidavit.

[113]    According to Love's deposition testimony, there were no instances of unwanted physical contact after Sirey received the written reminder. The only instances of harassment that Love alleges to have occurred after Sirey's Written Reminder on June 29, 2006, include (1) Sirey allegedly coming to the area where Love worked and staring at her from a dark corner of the room, and (2) Sirey allegedly making derogatory comments to Love on September, 11, 2006, Love's last day of work. Love Deposition at 203:7-24, 147:17-25-148:1-2, and 150:7-10. As explained in Section III.A.1, however, such conduct is nothing more than non-gender related bullying which does not violate Title VII. Motiva nevertheless responded to the staring allegations and had Sirey's Core

In sum, Motiva's response to the alleged harassment was not only reasonably calculated to be effective, it was effective.  Therefore, Love's sexual harassment claim must be dismissed.

### B.    The Undisputed Evidence Negates Love's Ability to Prove Retaliation.

Love alleges that Motiva retaliated against her by "writing her up" on numerous occasions for performance issues after she complained about Sirey's conduct.[114]  She also claims that Motiva's failure to provide light duty work after September 11, 2006 was retaliatory.[115]  To state a *prima facie* case of retaliation, Love must show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between participation in the protected activity and the adverse employment action.[116]  Assuming that Love engaged in protected activity when she complained about Sirey's behavior, Love's retaliation claim fails as a matter of law because the undisputed evidence shows that Love cannot establish either an adverse action or causal connection.

### 1.    Love cannot establish that she suffered an adverse action

To establish that she suffered an adverse employment action, Love must show that a reasonable employee would have found Motiva's challenged action materially adverse.[117]  Stated differently, Love must show that the challenged action could well dissuade a reasonable employee from engaging in the protected conduct.[118]  Love has not made such a showing.

---

Team Leaders instruct her to stay away from the area where Love was working unless she had a legitimate business purpose for being there.  Rutter affidavit at ¶ 19.

[114]    Complaint at ¶ 30.

[115]    Id.

[116]    Casarez v. Burlington Northern/Santa Fe Co. , 193 F.3d 334, 339 (5th Cir 1999); Burger v Central Apt. Mgt, Inc., 168 F.3d 875, 878 (5th Cir. 1999); *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995); McMillan v. Rust College , 710 F.2d 1112, 1116-18 (5th Cir 1983).

[117]    Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 57, 126 S.Ct. 2405, 2409 (2006).

[118]    Id.

Motiva has not terminated Love's employment; she is still employed by the company.[119]
Further, despite her claim that she has been "written up" numerous times, the only formal
discipline that Love has received is an oral reminder – step 1 on the three-step formal discipline
ladder.[120]   As for "write ups," Love may be referring to entries in her PDL showing that she
received coaching for work performance and attendance issues; however, coaching is not formal
discipline, and therefore, it is not actionable under Title VII.[121]

Love cannot prove that the oral reminder is an adverse action where the evidence
demonstrates that there were legitimate grounds for the oral reminder which are wholly unrelated
to any complaint of harassment.  Motiva's Production Assurance Manager has confirmed that the
company investigated the August 17 alarm incident and found objective data reflecting Love's
improper performance.[122]   Furthermore, Love was **not** dissuaded from bringing a charge of
discrimination by anything Motiva did.  She filed an EOOC charge against Motiva.[123]

---

[119]     Love Deposition at 72:12-22.

[120]     It is undisputed that the only level of formal discipline that is documented in Love's PDL is the
oral reminder that she received on September 6, 2006.  Love Deposition at 129:15-130:1.

[121]     Beaumont v. Tex. Dep't of Crim. Justice, 468 F.Supp.2d 907 (E.D. Tex. 2006), is exactly on
point.  The plaintiff in that case argued that the defendant retaliated against him when negative
comments were entered into his employee performance log after August 9, 2004.  Id. at 928.  The
plaintiff asserted that while several of the entries were dated prior to the alleged protected
conduct, they were not entered until after he engaged in the protected conduct.  Id.  Nevertheless,
the court found that such comments were not formal disciplinary action by the defendant and
thus, not of such a nature that they would dissuade a reasonable employee from engaging in
protected activity.  Id. at 928.  See also Davis v. Town of Lake Park, Fla.., 245 F.3d 1232, 1240
(11th Cir. 2001) (holding that informal reprimands not part of any formal "progressive discipline"
structure do not sufficiently constitute an adverse employment action).

[122]     Pastor Affidavit at ¶ 8 and Exhibit A to Pastor Affidavit.

[123]     See DeHart v. Baker Hughes Oilfield Operations, Inc., No. 05-21087, 214 F.App'x 437, 442 (5th
Cir. Jan. 19, 2007) (affirming summary judgment where the court concluded that the warning
would not have dissuaded a reasonable worker from making or supporting a charge of
discrimination because there were colorable grounds for the warning and employee did in fact file
a charge of discrimination a few weeks after receiving the warning).   Here, Motiva has
demonstrated that there were "colorable grounds" for issuing the oral reminder where  computer
printouts show the activities that day and indicate that the alarm sounded while Love was the
operator on the board and that Love acknowledged the alarm but did not notify the appropriate

Likewise, Love has no basis for her claim that Motiva retaliated against her by failing to provide her with light duty work after September 11, 2006. Motiva had provided Love with transitional duty work for eight months following her gastric bypass surgery, and this transitional duty assignment was granted and extended **after** Love made complaints about her difficulties in getting along with Sirey.[124] Love's repeated failure to properly respond to alarms in the light duty Board Operator position precluded Motiva from keeping her in that transitional duty position. There was no other transitional duty work Love could do within her restrictions as of September 11, 2006.[125]

Because none of the conduct that Love describes as retaliation constitutes an adverse employment action, Motiva is entitled to summary judgment on Love's retaliation claim.

### 2. There is no causal connection between Love's alleged complaints about Sirey's behavior and the alleged retaliatory conduct

Even if Love could show that she suffered an adverse action, the undisputed facts demonstrate that Love cannot establish that retaliation was a motivating factor for such action. The Fifth Circuit has held that "the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case."[126]

The **only** evidence that Love has offered to show a causal connection between the alleged retaliation and her complaints about Sirey is timing – coaching entries in the PDL and the oral reminder were issued after Love complained about Sirey's conduct. However, Motiva has

---

operator. Pastor Affidavit at ¶ 8. Moreover, as in <u>DeHart</u>, Love was in fact not dissuaded from engaging in protected activity because she filed her EEOC charge after receiving the oral reminder.

[124] Love allegedly started complaining about Sirey in March 2005 and was given transitional duty work in 2006.

[125] Pastor Affidavit at ¶ 15. The term "transitional duty" is used in lieu of "light duty" in accordance with Motiva policies. <u>Id.</u>

[126] <u>Roberson v. Alltel Information Services</u>, 373 F.3d 647, 655 (5th Cir. 2004) (citations omitted).

produced evidence showing that it had legitimate, non-retaliatory reasons for the coaching and the oral reminder. The specific reasons documented in her PDL confirm that the coaching Love received was based on work performance and attendance problems, and was in no way related to her complaints about Sirey.[127]  In addition, Love's PDL shows that she received **positive** recognition after her alleged complaints.[128]  Motiva has also demonstrated that it had a non-retaliatory basis for issuing the oral reminder – Love's failure to properly respond to the alarm on August 17, 2006. No reasonable jury could infer that Motiva retaliated against Love by failing to create new transitional  duty work for Love after September 11, 2006, when Love had failed to meet the performance standards for the transitional duty position she had been assigned for the previous eight months. The undisputed facts show that Love was not physically able to perform any available job as of September 11, 2006.[129]

With nothing more than timing, Love is not entitled to a trial on her retaliation claim.[130]

## VI.    CONCLUSION

Love has failed to present any genuine issues of material fact supporting her same-sex, sexual harassment and retaliation claims. Therefore, both claims should be dismissed with prejudice.

---

[127]    Love's PDL, attached as Exhibit A to Rutter Affidavit.

[128]    Id. (Love's PDL shows entries for positive recognition on 03/24/06, 04/23/06, and 06/09/06).

[129]    Love's neurologist has represented that Love is unable to perform **any** job. Love Deposition at 51:21-23. And Love has never told Motiva that she is ready to return to work. Id. at 51:3-8. Motiva has not received notice from Love's physicians since September 12, 2006 indicating that she is able to return to work in any capacity. Trimble Affidavit at ¶ 7.

[130]    Roberson, 373 F.3d at 655 (5th Cir. 2004) (granting summary judgment in favor of defendant on Plaintiff's retaliation claim where only evidence showing casual connection was the mere fact that the alleged retaliatory conduct occurred after the protected activity and defendant presented evidence showing legitimate non-retaliatory reasons for such conduct). See also Raggs v. Miss. Power 7 Light Co., 278 F.3d 463, 471-72 (5th Cir. 2002) (concluding that defendant's decision not to hire plaintiff was not a function of retaliation where plaintiff's only evidence was timing).

Respectfully submitted,


_____/s/ Thomas J. McGoey II_____
Thomas J. McGoey II, T.A. (Bar #18330)
Kindall C. James (Bar #31203)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139-5099
Telephone:  (504) 581-7979
Fax:  (504) 556-4108

Attorneys for Motiva Enterprises LLC


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served

upon all counsel of record by U.S. mail and/or efiling notice this 7th day of July, 2008.


_____/s/ Thomas J. McGoey II_____