UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CONNIE M. LOVE                          CIVIL ACTION

VERSUS                                  NO: 07-5970

MOTIVA ENTERPRISES, LLC                 SECTION: J(4)

**ORDER AND REASONS**

Before the Court is Defendant Motiva Enterprises LLC's ("Motiva") Motion for Summary Judgment (Rec. Doc. # 11).

This motion was set for hearing on August 20, 2008 on the briefs.  Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds as follows.

**Procedural History and Background Facts**

Connie Love ("Love") has been an employee of Motiva since May of 2000.  Love worked in the coker unit during all relevant periods, despite missing several periods of work for medical reasons.  Love was on leave from October 2005 to January 2006 as a result of gastric bypass surgery during which her doctors discovered herniated discs in her back.  While Love had worked as an operator in the coker unit prior to discovery of the herniated discs, she was transferred from operator work to a light duty position as a Board Operator, who monitors processes via computer and directs operators in the unit to open or close valves as needed to reduce pressure as a result of foaming.[1]  After two

_____

    [1]  The production of coke produces a foam which results in build up of pressure in the production unit.  The Board Operator

incidents in August of 2006 in which Love apparently failed to properly notify unit operators of rising foam pressure levels ("the foaming incidents"), she was removed from her position as Board Operator as a safety precaution.  Nonetheless, Love was given an opportunity to study and qualify for another position as a utility operator, but according to her doctors her physical limitations prevented her from taking such a position.  As a result, Love went on disability and has been on disability with Motiva since September 11, 2006.

Love alleges that she was subjected to same-sex sexual harassment by her co-employee Jeanne Sirey ("Sirey") beginning in March of 2005 when Sirey was transferred to Love's unit, and continuing through Love's last day of work with Motiva before she went on disability leave on September 11, 2006.  The alleged harassment consisted of various verbal,[2] physical,[3] and

---

monitors this pressure and directs operators in the unit to introduce anti-foam into the process.

[2]  Love alleges in her Complaint and Opposition Memorandum that Sirey referred to her intermittently as a "sorry excuse for a woman" who did not make it "conducive for all women to come to the coker unit."  Compl.¶¶ 5-6.  Sirey also allegedly called Love a "fat cow," "f***ing bitch," and "stupid bitch."  Id. at ¶ 7. Additionally, Sirey  told Love "You think that's a body you have? You should be ashamed" and that she was a "failure as a woman" and "incapable of speaking up for herself; that she was useless as a woman" along with other similar sentiments.  Pl.'s Opp'n Summ. J., 5-6.

[3]  Love alleges primarily four types or instances of physical harassment by Sirey:

2

psychological[4] harassment by Sirey against Love.

---

1) In one instance Sirey placed her hand under Love's bra strap and panty line in March of 2005.  Compl., ¶ 11; Def's Mem. Supp. Summ. J., 6-7; Pl.'s Mem. Opp'n Summ. J., 6.

2) Approximately 20 times during January through March of 2006, Sirey would intentionally rub her breast (Compl. ¶ 15) and crotch (Pl. Mem. Opp'n Summ. J., 13-14) on Love while reaching above Love's desk to retrieve log books.

3) Sirey tried to hug Love while they were riding in a truck to the coker unit on Love's first day back at work after her gastric bypass surgery.  Compl. ¶ 14; Def's Mem. Supp. Summ. J., 7.  Additionally, in Love's Opposition Memorandum, Love claims that Sirey tried to kiss her during this truck ride incident, and that she vomited and broke out in hives as a result.  Pl. Mem. Opp'n Summ. J., 12.

4) In April or May of 2005, Sirey came up behind Love while she was in the control room and tried to massage Love's back and shoulders.  Def's Mem. Supp. Summ. J., 7; Pl.'s Opp'n Summ. J., 24.  Love's Opposition indicates that these touchings continued through March 2006.

[4]  Love alleges various actions by Sirey that can best be described as psychological harassment.  For example, Sirey allegedly engaged in what Love describes as "close stalking" at various periods throughout 2005 and 2006.  This "close stalking" involved Sirey aping Love's movements (i.e. sitting when Plaintiff sat, standing when Plaintiff stood) as well as sitting and staring at Love from the dark of the exercise room across from the control board room where Love worked.  Compl., ¶8; Pl.'s Opp'n Summ. J., 14-17.  Some of this "close stalking" occurred at off-site functions.  Pl.'s Opp'n Summ. J., 14.  Additionally, there are various allegations throughout Love's Complaint and Opposition suggesting that Sirey made threatening and suggestive comments to her during the roughly two year period of alleged harassment.  Most significantly, Love alleges that Sirey would lock her either into or out of bathrooms and locker/changing rooms in the coker unit and tell Love she would let her in (or out) if Love were "nice" to her, would "respect her," and "do favors for her."  Pl.'s Opp'n Summ. J., 7.  Love claims these

Additionally, Love claims that Motiva retaliated against her for her frequent complaints about Sirey's behavior. Specifically, Love alleges that her supervisors frequently "wrote her up" after she complained of Sirey's behavior, and that Motiva retaliated by not finding a light duty position for her after she was removed from the Board Operator position.[5]  The only formal disciplinary action reflected in Love's Personal Development Log ("PDL") is an Oral Reminder (the lowest form of disciplinary action in Motiva's three-tier system) following the first foaming incident.  These alleged "write-ups" may refer to notations in Love's PDL indicating that she received coaching for performance and attendance issues.  Regardless of their nature, some of these "write-ups" were allegedly back-dated and duplicated. Additionally, Love claims that her own handwritten notes regarding several of Sirey's allegedly harassing actions were removed from her PDL file. Love also alleges that Motiva has produced several different versions of her PDL, none of which is

_____

requests were sexually suggestive.  Id.  Further, Love claims that one of these incidents involved Sirey's asking for favors while Sirey licked her lips and rubbed her own breasts and pubic area.  Id. at 8.  It is unclear how Plaintiff could have seen these gestures if she were locked into or out of a room at the time by Sirey.

[5] Love refers to various events happening during her time as Board Operator in the "old control room" as well as the "new control room."  It is not clear in Love's Complaint or Opposition when the switch from old to new control room occurred, but it was likely sometime in mid-2006.

the one she reviewed herself in September of 2006.

Accordingly, Love filed this suit seeking damages for same-sex sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII").

### DISCUSSION

**A.   Summary Judgment Standard**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If that burden has been met, the non-moving party must establish the specific material facts in dispute to survive summary judgment.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

When a Rule 56 Motion for Summary Judgment is supported or opposed with affidavits, the affidavits must set out facts that would be admissible in evidence.  Fed. R. Civ. P. 56(e)(1). Furthermore, affidavits submitted in opposition to a motion for summary judgment can supplement deposition testimony, but cannot contradict prior deposition testimony of the affiant without explanation.  Barlow v. Allstate Tex. Lloyds, 214 Fed. Appx. 435, 437 (5th Cir. 2007); S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489 (5th Cir. 1996); Thurman v. Sears, Roebuck, & Co., 952

F.2d 128, 136 n.23 (5th Cir. 1992).  While a summary judgment affidavit may supplement deposition testimony if it "simply clarifie[s] or amplifie[s] the facts by giving greater detail or additional facts," the affidavit cannot merely "tell[] the same story differently."  S.W.S. Erectors Inc., 72 F.3d at 496.

**B. Motiva's Motion for Summary Judgment**

Motiva argues that Love has failed to present material issues of fact sufficient to support a same-sex sexual harassment claim under Title VII.  First, Motiva argues that Love's same-sex hostile work environment claim must fail because Love has not produced any evidence that Sirey's actions were based on sex or sufficiently severe or pervasive.  Specifically, Motiva argues that Love has produced no evidence that Sirey is homosexual.

As to Love's retaliation claim, Motiva argues that summary judgment is proper because it has not taken any adverse employment action against Love.  Specifically, Motiva argues that Love's removal from her Board Operator position was not an adverse employment action because she remains employed by Motiva (albeit on disability leave).  Additionally, even if Love did experience an adverse employment action, this resulted not from retaliation, but due to safety concerns as a result of the foaming incidents, as well as the fact that no other positions were available that could accomodate Love's health issues.

In opposition, Love argues that Sirey was in fact a self-

6

proclaimed homosexual who subjected her to unwanted and highly offensive sexual advances.  These advances were allegedly severe enough to cause Love at various times to suffer nausea, panic attacks, hives and other physical symptoms.  Additionally, Sirey allegedly engaged in stereotyping harassment by verbally attacking Love for not fitting her stereotypical model of a "slimmer, liberated woman."

With respect to the retaliation claim, Love alleges that after she filed complaints with HR and threatened to and did file a complaint with the EEOC in August of 2006 regarding Sirey's behavior, Motiva retaliated by entering negative remarks on her PDL, some of which were backdated and duplicated.  Additionally, Love alleges that she took proper action in the foaming incidents.  As a result, Love suggests that her removal from the Board Operator position was not due to safety concerns, but was a pretextual retaliatory act for her complaints about Sirey.

**C.   Same-sex Sexual Harassment claims under Title VII**

Generally, a Title VII sexual harassment claim can be proven by showing that an employer has discriminated by taking a "tangible employment action" against the claimant "'because of such individual's sex.'" Lauderdale v. Tex. Dept. of Criminal Justice, Inst'l. Div., 512 F.3d 157, 162 (5th Cir. 2007) (quoting 42 U.S.C. § 2000e-2(a)(1)).  Additionally, a sexual harassment claim can be proven by showing that the alleged harassment

created a "hostile or abusive working environment." Harvill v.
Westward Commc'ns, L.L.C., 433 F.3d 428, 434 (5th Cir. 2005).

A hostile work environment claim requires a prima facie
showing that: 1) the claimant is a member of a protected group;
2) the claimant was the victim of uninvited sexual harassment; 3)
the harassment was based on sex; 4) the harassment affected a
"term, condition, or privilege" of the claimant's employment; and
5) the claimant's employer knew or should have known of the
harassment and failed to take prompt remedial action. Harvill,
433 F.3d at 434 (citing Woods v. Delta Beverage Group, Inc., 274
F.3d 295, 298 (5th Cir. 2001)). This five-part analysis applies
when the alleged harasser is a co-worker and not a supervisor of
the claimant. Woods, 274 F.3d at 298 n.2. Additionally, "[f]or
sexual harassment to be actionable, it must be sufficiently
severe or pervasive 'to alter the conditions of [the claimant's]
employment and create an abusive working environment.'" Harvill,
274 F.3d at 434 (quoting Meritor Sav. Bank, FSB v. Vinson, 477
U.S. 57, 67 (1986).

While the severity or pervasiveness inquiry considers the
totality of the  circumstances, relevant factors in assessing the
severity of sexual harassment include the frequency of the
conduct, the severity of the conduct, and whether the conduct is
physically threatening or humiliating or merely offensive
language. Harvill, 274 F.3d at 434. These factors are

considered both objectively and subjectively – that is from the viewpoint of both a reasonable person as well as the claimant herself.  Id.  Finally, the severity or pervasiveness requirement demands proof that "the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted *discrimination* because of sex." La Day v. Catalyst Tech., Inc., 302 F.3d 474, 478 (5th Cir. 2002) , (quoting Oncale v.Sundowner Offshore Svcs., Inc., 523 U.S. 75, 81 (1998)) (ellipsis and quotations omitted).

The Fifth Circuit has recognized three means under Oncale of showing that same-sex harassment constitutes sex discrimination under Title VII: 1) proof that the harasser made "explicit or implicit proposals of sexual activity" as well as "credible evidence that the harasser was homosexual," including but not limited to proof of non-humiliating sexual contact of some kind with the claimant or evidence of same-sex advances on others; 2) proof that the harasser was "motivated by general hostility to the presence of [members of the same sex] in the workplace;" and 3) proof by "direct, comparative evidence about how the alleged harasser treated members of both sexes in a mixed sex workplace." La Day, 302 F.3d at 478 (quoting Oncale, 523 U.S. at 80).

Love does not claim that Motiva has taken any tangible employment action against her because of sex.  Thus, Love's same-sex harassment claim must proceed under the theory that the

behavior of her co-worker Sirey created a hostile work environment.  Accordingly, to withstand summary judgment Love must meet the five-part prima facie showing for a hostile environment claim under Harvill/Woods.

**1) Parts 2 & 3 of the Harvill/Woods Test**[6]

Under the second and third prongs of the Harvill/Woods test (i.e. the "uninvited sexual harassment" and "because of sex" prongs), Love must show that she experienced one of the three kinds of Oncale/La Day discriminatory same-sex harassment because of sex in order to survive summary judgment.  Motiva argues that Love has not made a prima facie showing of sexual harassment because of sex under any of these three types.

**a) Explicit/Implicit Proposal of Sexual Activity**

First, Motiva claims that Love cannot show any explicit or implicit proposals of sexual activity by Sirey.  Motiva notes that Love admitted in her deposition that Sirey never asked her to have sex with her, never told Love she wanted to have sex with her, nor told Love that she thought about having sex with her.[7] Further, Motiva argues that Love has no credible evidence that Sirey is homosexual.  Love's own deposition testimony reveals

---

[6] The parties do not dispute that Love as a female is a member of a protected class, and thus the first part of the Harvill/Woods test is met.

[7] Def.'s Mem. Supp. Summ. J., 12.

that she did not know whether or not Sirey was a lesbian.[8]

Love counters in her Opposition with evidence that allegedly tends to prove that Sirey did make sexual proposals.[9]  However, these alleged implicit proposals of sexual activity do not imply a desire on Sirey's part to have sexual contact with Love.   In fact, it is illogical that Sirey would desire a sexual relationship with Love while at the same time ridiculing her physical appearance and proclaiming that she did not like Love.  Rather, as pointed out by Motiva, the more rational explanation for the disconnect between Sirey's alleged implicit sexual proposals and her otherwise horrendous treatment of Love is that Sirey intended to humiliate Love rather than come on to her.  This logical explanation is even further cemented in terms of a summary judgment analysis by Love's deposition testimony that Sirey never made any sexual advances towards her.[10]

---

[8]  See Def.'s Mem. Supp. Summ. J., Ex. 1.  See also Def.'s Reply Mem. Supp. Summ. J., 2.

[9]  While Love's complaint does not directly allege that Sirey made sexually suggestive proposals, her Opposition and accompanying Declaration indicate several instances in which Sirey allegedly intimated that she wanted to engage in sexual activity with Love.  For example, Love's Declaration states that during one of the incidents in which Sirey locked her out of the bathroom or locker room, Sirey said she would let her out if Love were "nice" to Sirey or would "do her favors."  Pl.'s Mem. Opp. Summ. J., Ex. 1 ¶¶ 14, 21.  Love alleges that these requests were implicit requests for sexual encounters.  Additionally, as noted *infra* at fn. 16, Love's Declaration also alleges that Sirey attempted to kiss her.

[10]  See Def.'s Mem. Supp. Summ. J., Ex. 1 at 165.

Additionally, the Fifth Circuit has upheld summary judgment on a same-sex sexual harassment claim for lack of proof of proposed sexual activity when the claimant testified at her deposition that she "did not know" why the alleged harasser kissed her on the cheek or told the claimant she loved her.  <u>Noto v. Regions Bank</u>, 84 Fed. Appx. 399, 402 (5th Cir. 2003).  In <u>Noto</u>, the plaintiff alleged that her female supervisor made implicit proposals of sexual activity by telling plaintiff she had gay friends, hugging and kissing plaintiff on the cheek, and saying "I love you."  <u>Id</u>.  However, plaintiff admitted that the supervisor had not made any explicit proposals of sexual activity.  <u>Id</u>.  Additionally, defendant presented proof that the supervisor was similarly affectionate with other co-workers.  <u>Id.</u> The Fifth Circuit held that plaintiff could not show that the supervisor's behavior was sexually motivated.  <u>Id</u>.  Furthermore, the court held that plaintiff's deposition testimony that she did not know what the supervisor meant when she told plaintiff "I love you," as well as plaintiff's statement that she did not know why the supervisor kissed her on the cheek, revealed that plaintiff did not subjectively believe the supervisor's actions were motivated by sex.  <u>Id</u>.  Additionally, the <u>Noto</u> court pointed out that "not once during her deposition did [plaintiff] claim she had been sexually harassed" by the supervisor.  <u>Id.</u>  Finally, the <u>Noto</u> court emphasized that plaintiff's deposition was the

12

only evidence submitted in opposition to the defendant's motion for summary judgment.  Id.

Similarly, Love has never claimed that Sirey made any express sexual proposal.  Furthermore, throughout Love's deposition, she testified that Sirey's alleged harassment and inappropriate touching were in the context of derogatory comments about her body.[11]  Additionally, Love testified that in other instances in which Sirey touched her, Sirey had said she was "just being friendly."[12]  Finally, Love did not directly testify at all in her deposition that she believed Sirey had sexually harassed her.  Thus, like the plaintiff in Noto, Love's testimony regarding express or implicit proposals of sexual activity by Sirey reveals a lack of subjective belief that Sirey's conduct was sexually motivated.  Furthermore, the facts in this case go even further to show a lack of subjective belief by Love that Sirey's conduct was sexually motivated since Love admits that Sirey's actions were in most instances accompanied by derogatory comments.

---

[11]  See, e.g., Def.'s Mem. Supp. Summ. J., Ex. 1 (Pl.'s Dep.) at 150 (Sirey walked into bathroom while Love was changing and said "Oh, God, that is a sight to see" and "Boy, that is a sight to see walking in this door"), 172 (Sirey put her hand under Love's bra strap and panty line, but did not touch Love's breasts or private parts, while saying that Love was a "sorry excuse for a woman;" a "stupid bitch;" was "fat, disgusting;" and generally uttering "very derogatory comments).

[12]  Id. at 178.

Love did testify that Sirey rubbed her breasts on her while reaching to grab books off a shelf, but did not testify that this action was sexual in nature.[13]  Love also testified that Sirey attempted to hug her while saying "It has been so long since I seen [sic] you" and "You look so good.  Oh my God, look at you" after Love returned from her gastric bypass surgery.[14]  However, given the history of derogatory comments by Sirey, the hug and accompanying comments do not constitute an implicit proposal for sexual activity.  Finally, the only "suggestive moves . . . that might indicate [Sirey] was interested in sex" included Sirey's "licking of her lips with comments and stuff," such as "You think you're a woman," and "Just be aware.  Always look over your shoulder."[15]  Again, while licking one's lips may be sexually suggestive in some contexts, when combined with this threatening language, the sexual connotation disappears.

The conduct that Love alleges by Sirey in her Complaint and deposition does not constitute either explicit or implicit proposals for sexual activity.  However, unlike the plaintiff in Noto, Love does present additional evidence in her Opposition that Sirey physically touched her in a sexually suggestive manner.  There was little proof in the record prior to filing of

---

[13]  Id. at 180-82.

[14]  Id. at 184.

[15]  Id. at 254.

14

Love's Opposition that these touchings were sexually suggestive. However, Love's Opposition evidence is at least inconsistent with if not contradictory to her deposition testimony.[16]  Therefore, under the S.W.S. Erectors Inc. holding, to the extent that Love's Declaration is an attempt to "tell the same story differently," the inconsistent portions of the Declaration should not be considered as competent summary judgment evidence.  As such, Love has not shown evidence of implicit or explicit sexual proposals under Oncale/La Day.

### b) Credible Evidence of Homosexuality

As noted above, the first type of Oncale/La Day showing of same-sex sexual harassment requires proof of explicit or implicit sexual proposals and credible proof that the harasser is homosexual.  Thus even if Love could show explicit or implicit sexual proposals by Sirey, she must also bring forth credible proof that Sirey is actually homosexual.  The homosexuality of the harasser can be shown in any number of ways, including by 1) proof that the harasser made sexually interested advances directed at the claimant that were not intended to humiliate, or

---

[16]  For contradictions, see Pl.'s Mem. Opp. Summ. J., 6 (describing the bra/panty incident and indicating that Sirey was looking Love up and down and licking her lips during this incident, but omitting the derogatory comments by Sirey included in Love's deposition testimony describing the incident); 12 (describing the incident of Sirey's attempt to hug Love in the truck, which Love testified consisted only of a hug, but adding that Sirey attempted to kiss Love , causing her to vomit and break out in hives).

2) by showing same-sex advances on others.  La Day, 302 F.3d at 480.  Accordingly, Love also presents circumstantial evidence in her Opposition to show that Sirey was a homosexual.

Initially, Love offers a declaration by John Levron ("Levron"), another co-worker in the coker unit, that Sirey allegedly proclaimed that she was gay in his presence.[17] However, Levron's declaration suffers from two defects, one formal and one substantive.

First, Levron's declaration is improper summary judgment evidence because it includes inadmissible hearsay statements of Sirey and thus violates the requirement of Rule 56(e)(1) that opposing affidavits include facts that would be admissible at trial.[18]  Love argues that Sirey's hearsay statements in Levron's declaration fall under the "excited utterance" exception of Rule 803(2) of the Federal Rules of Evidence.  Fed. R. Evid. 802(2). The "excited utterance" exception allows hearsay statements to come into evidence when the statement relates to "a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition."  Id.  However, Levron's declaration does not give any indication of what if any "startling event or condition" triggered this alleged outburst by

---

[17] See Pl.'s Mem. Opp. Summ. J., Ex. 4 ("I have heard Jeanne Sirey state loudly several times that the reason the men did not like her was **because she was gay or female**.").

[18] See Def.'s Reply Mem. Supp. Summ. J., 2.

16

Sirey.  Furthermore, the fact that he alleges to have heard such statements several times suggests the triggering event may have been recurring, and thus not startling.

Second, and perhaps more importantly, Levron's declaration states merely that Sirey claimed men in the coker unit did not like her because she was "gay *or female*."  Thus Levron's declaration does not credibly prove that Sirey was homosexual because the alleged statement by Sirey indicates she was unliked either because she was gay or because she was female, without confirming whether either of these propositions is true.

Additionally, Love's own Declaration in her Opposition alleges that Sirey made sexual advances on Love that prove she is homosexual.  However, Love's Declaration, like Levron's, suffers from significant substantive defects because it directly contradicts her prior deposition testimony in several specific ways.  First, and as noted above, Love testified at her deposition that she did not know whether Sirey was homosexual.  However, Love's deposition statement that she did not "know anything about Ms. Sirey's sexual orientation" is directly contradicted by allegations in her Declaration that she saw Sirey engaged in a long kiss with another woman, that Sirey tried to kiss her, and that Sirey made sexual gestures towards her.[19]

---

[19]  Specifically, Love's declaration indicates that she saw Sirey engaged in a more than 30 second kiss with an unidentified female in a truck outside the coker unit (Pl.'s Mem. Opp. Summ.

17

Additionally, Love's deposition testimony described the incident
in the truck as simply an attempted hug, but her Declaration
alleges that in the same incident Sirey tried to kiss her.[20]

Love contends that she has offered a valid explanation for
the contradictions between her deposition and Declaration
testimony as required by <u>S.W.S. Erectors Inc</u>.  Specifically, Love
argues that her Declaration statement that she saw Sirey kissing
another woman does not contradict her "bottom line conclusion
that she herself 'does not *know*' whether Sirey is a lesbian."[21]
This statement itself reveals a lack of credible evidence on the
issue of Sirey's homosexuality.  Additionally, Love argues that

---

J., Ex. 1 at ¶5); that Sirey locked her out of the ladies
changing room and said she would only let her out if she were
"nice" to Sirey while Sirey rubbed her breasts and pubic area and
licked her lips (<u>id</u>. ¶ 14) ; and that Sirey tried to kiss her on
a truck ride into the coker unit from the front gate (<u>id</u>. at
¶26). All these statements contradict Love's deposition testimony
that she did not know anything about Sirey's sexual orientation.
See Def. Mem. Supp. Summ. J., Ex. 1 at 165.

[20]  The specific deposition testimony reads as follows:
Q.    You thought she was trying to hug you?
A.    That's what it looked like.
Q.    All right, and after you told her, you know, leave me alone,
      she didn't try to touch you anymore?
A.    Not then, but I got out and went and called – I tried to get
      somebody else to come and get me, and they wouldn't, and I
      had to ride with her, but I crammed myself as close – as far
      away from her in that truck, which is very difficult to do
      in a small truck.  I was hanging out the window.
On the other hand, Love's Declaration describes the same event as
follows: "As [Sirey and Love] drove to the unit, Sirey tried to
kiss [Love] on the mouth.  This so nauseated [Love] that she hung
out of the truck door, gagging the rest of the way to the coker
unit and threw up when she got there." Pl.'s Mem. Opp. Summ. J.,
Ex. 1 ¶ 26.

[21]  Pl.'s Reply Mem. Opp. Summ. J., 2.

all her other deposition testimony regarding the various incidents in which Sirey touched her make it apparent that Love "interpreted [Motiva's] questions in an overly strict fashion" to be asking whether she had a direct statement that Sirey was homosexual.[22]  However, Love testified not only that she did not know whether Sirey was homosexual, but also that she did not "*know anything* about Ms. Sirey's sexual orientation."[23]  Thus regardless of Love's interpretation of Motiva's questions, she could not have misinterpreted the question "Do you know anything about Ms. Sirey's sexual orientation?" as not applying to instances in which Sirey purportedly kissed another woman and attempted to kiss her.  Therefore, Love's Declaration regarding Sirey's alleged homosexuality contradicts her deposition testimony and is incompetent summary judgment evidence.

Love has not shown that Sirey made implicit or explicit sexual proposals, nor has she presented credible evidence of Sirey's homosexuality under the Oncale/La Day framework. Thus Love has not made the prima facie showing on a claim for same-sex sexual harassment under the first of the three Oncale/La Day factors, and therefore cannot meet parts two and three of the Harvill/Woods framework.

### c) Other Proof of Same-Sex Harassment under Oncale/La Day

---

[22] Id.

[23] See Def.'s Mem. Supp. Summ. J., Ex. 1 at165.

19

While Love seems to rely mostly on the first type of Oncale/La Day showing to prove her same-sex sexual harassment claim, the Court will briefly address the other two types since Love's pleadings are somewhat unclear.

Same-sex sexual harassment can also be shown under Oncale/La Day by proof that the harasser was motivated by hostility to presence of members of the same sex in the workplace.  Love cannot make this showing on the record evidence because there is no proof of how Sirey treated any other women in the coker unit.

Finally, Love cannot prove same-sex sexual harassment by comparative evidence of how Sirey treated members of both sexes in the coker unit, because the record includes uncontested evidence that Sirey treated both men and Love very badly.

**2) Part 4 of the Harvill/Woods Test - Severity or Pervasiveness**

In addition to Love's inability to show an issue of material fact on parts 2 and 3 of the Harvill/Woods test, she also fails to meet part 4 of the test since she cannot show that Sirey's alleged harassment affected a "term, condition, or privilege" of her employment with Motiva.  Sirey's conduct was not severe or pervasive enough to meet the requirements of a hostile work environment claim, which would satisfy the "term, condition, or privilege" requirement of the Harvill/Woods framework.  See Harvill, 433 F.3d at 434 (noting that actionable sexual

20

harassment must be sufficiently severe or pervasive to alter the conditions of the claimant's employment by creating an abusive work environment).

Neither Love's Complaint nor deposition make any allegations that Sirey touched Love's private parts or made any direct requests for sexual contact. The only allegation of possibly inappropriate sexual touching involved the incident in the changing room in which Sirey placed her hand under Love's bra strap and panty waistband. However, Love testified in deposition that Sirey did not touch her breasts or private parts.[24] Furthermore, the Complaint and deposition also indicate that at the time of this inappropriate touching, Sirey was ridiculing Love's body, which would indicate that the touching was *not sexually motivated*. Rather, it seems from Love's Complaint and deposition testimony that Sirey's conduct was mostly derogatory and offensive language that, although hurtful, was not physically threatening. To any extent that Sirey's conduct can be seen as sexually motivated, it constituted at most "conduct . . . merely tinged with offensive sexual connotations" that does not constitute discrimination because of sex under Oncale and La Day. La Day, 302 F.3d at 478 (quoting Oncale, 523 U.S. at 81).

Additionally, Fifth Circuit precedent in the realm of sexual harassment claims has generally upheld summary judgment even on

---

[24]   See Def.'s Mem. Supp. Summ. J., Ex. 1 at174-75.

facts more egregious than those of the instant case.  For example, in Russel v. University of Texas of Permian Basin, the appellate court upheld summary judgment of a same-sex sexual harassment claim under a hostile work environment theory based on lack of severity and pervasiveness when the female defendant had rubbed the inside of the female plaintiff's hand and thigh; twice intimated that she wanted to move to New York with plaintiff; stated that she would like to watch a movie in bed with plaintiff; and called plaintiff "honey" or "babe."  234 Fed. Appx. 195, 205 (5th Cir. 2007).  The court based its holding on a comparison of the types of behavior at issue in Russel with those in Hockman v. Westward Communications, LLC, an opposite-sex sexual harassment claim under a hostile work environment theory. Russel 234 Fed. Appx. at 205 (citing Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 327-28 (5th Cir. 2004).  In Hockman, the Fifth Circuit held as a matter of law that plaintiff could not establish a hostile work environment claim based on the fact that the male defendant had commented about another female employee's body, slapped plaintiff's buttocks with a newspaper, grabbed or brushed against her breast and buttocks, and attempted to kiss her once.  Hockman, 407 F.3d at 328.  The Russel Court held that the alleged harassment by the female defendant against the female plaintiff were "on the same plane as those . . . found insufficient to establish 'severe or pervasive' harassment in

Hockman."  <u>Russel</u>, 234 Fed. Appx. at 205.[25]

Likewise, the allegations in Love's Complaint and deposition are on the same plane as, if not a lower plane than, those in <u>Russel</u> and <u>Hockman</u>.  In those cases, the alleged harassment was connected with amorous sentiment, whereas Love's allegations include patently non-romantic insults and even threats in connection with the purported harassment.  Thus, the allegations in Love's Complaint and deposition tend more towards conduct "tinged with offensive sexual connotations" than discrimination because of sex.  Although Love's Opposition adds new allegations that Sirey rubbed herself suggestively and made sexually suggestive comments, and even to the extent Sirey allegedly attempted to kiss Love, these allegations do not exceed those involved in <u>Hockman</u>, in which the Fifth Circuit affirmed summary judgment.  Additionally, as noted above, the allegation that Sirey attempted to kiss Love contradicts Love's deposition testimony and thus should not be considered.  Thus in light of <u>Russel</u> and <u>Hockman</u>, Love's same-sex harassment claim fails as a matter of law because her allegations do not meet the severity or pervasiveness requirement of a same-sex sexual harassment claim under <u>Harvill/Woods</u>.

---

[25] See also <u>Noto v. Regions Bank</u>, 84 Fed. Appx. 399, 402 (5th Cir. 2003) (upholding dismissal of same-sex sexual harassment claim on summary judgment for lack of proof of severity or pervasiveness).

**D.   Sexual Stereotyping Claim**

Love's Opposition Memorandum indicates that she also seeks to recover under a theory of so-called "gender stereotyping evidenced by Sirey's complaints . . . that [Love] did not conform to Sirey's idea of a liberated, physically fit woman."  The existence of a claim for sexual stereotyping under Title VII was first suggested by the Supreme Court in Price Waterhouse v. Hopkins. 490 U.S. 228, 250 (1989) (recognizing stereotyping as discriminatory under Title VII in context of male partners' comments that female plaintiff did not act or dress  like a woman and was too aggressive).  The Court held that a claim of sexual stereotyping has legal relevance insofar as "Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from stereotypes."  Id. at 251.  The theory of same-sex sexual stereotyping discrimination has been recognized by several circuits with varying levels of acceptance.[26]

_____

[26]  See, e.g., Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 259 (1st Cir. 1999) (recognizing same-sex sexual stereotyping, hostile environment discrimination claim under Title VII, but upholding summary judgment dismissal due to lack of factual development in summary judgment record); Simonton v. Runyon, 232 F.3d 33, 37-38 (2d Cir. 2000) (recognizing possible Title VII same-sex sexual harassment stereotyping claim, but upholding Rule 12(b)(6) dismissal of such claim for failure to allege sufficient facts on such claim); Bibby v. Phila. Coca Cola Bottling Co., 260 F.3d 257, 263-64 (3d Cir. 2001) (recognizing Title VII same-sex sexual harassment claim under theory of gender stereotyping, but upholding summary judgment dismissal for failure to present sufficient evidence of such a claim); Smith v. City of Salem, Ohio, 378 F.3d 566, 571-73 (6th Cir. 2004) (recognizing Title VII sexual stereotyping harassment claim and

Furthermore, these claims arise almost invariably in situations where the plaintiff is homosexual and is discriminated against as a result of his or her failure to meet gender stereotypes, and *always* in situations where the plaintiff exhibited characteristics that were not consistent with his or her biological sex.  The Fifth Circuit, among others, has yet to recognize or apparently even approach the gender stereotyping theory of Title VII discrimination, under either a same-sex or opposite-sex fact scenario.

Even if sexual stereotyping harassment is a valid claim under Title VII in the Fifth Circuit, Love has both procedurally

---

overturning Rule 12(c) dismissal of such claim based on allegations in complaint of conduct and mannerisms of transexual male plaintiff that did not conform with employer's and co-workers sex stereotypes of how a man should be); Doe v. City of Belleville, Ill., 119 F.3d 563, 580-83 (7th Cir. 1996) (recognizing Title VII same-sex sexual harassment claim for sexual stereotyping based on fact that plaintiff was harassed because he wore an earring and holding that a man who is harassed because "his voice is soft, his physique is slight, his hair is long, or because in some other respect he exhibits his masculinity in a way that does not meet his coworkers' idea of how men are to appear and behave, is harassed 'because of' his sex") (vacated and remanded on other grounds, 523 U.S. 1001 (1998)); Nichols v. Azteca Rest. Enters., Inc., 256 F.3d 864, 874 (9th Cir. 2001) (recognizing Title VII same-sex sexual harassment claim under a hostile environment theory and reversing judgment against plaintiff based on fact that plaintiff proved he was harassed because of sex when his coworkers referred to him in female terms and ridiculed his allegedly female mannerisms); Medina v. Income Support Div. of N.M., 413 F.3d 1131, 1135 (10th Cir. 2005) (recognizing Title VII same-sex stereotyping claim under Title VII under hostile work environment theory , but affirming summary judgment dismissal of plaintiff's claim because plaintiff offered no evidence that she herself did not dress or behave like a stereotypical woman).

and substantively failed to make any such claim.  First of all,
no claim or even allegation of sexual stereotyping harassment
appears in Love's Complaint or in her deposition testimony.  The
only mention of any sexual stereotyping claim is in Love's
Opposition.  Love argues that under federal fact pleading "[t]he
facts giving rise to the label of stereotype harassment were pled
and well-developed by defendant in its deposition of
plaintiff."[27]  First, it is unclear how a defendant could plead
in a plaintiff's deposition on behalf of the plaintiff.  Second,
Love's deposition does not mention or even obliquely reference
any issue of sexual stereotyping.  Finally, the only allegations
of sexual stereotyping, which appear in Love's Opposition
Memorandum, state merely that Sirey harassed Love because Love
"did not conform to Sirey's idea of a liberated, physically fit
woman" or "slimmer, liberated woman."

In addition to the fact that these allegations are bare and
conclusory, they contradict the very basis of any possible
stereotyping claim.  Love argues that Sirey stereotyped her based
on *Sirey's idea of a liberated, physically fit woman*.  However,
"Sirey's idea" of a liberated physically fit woman by definition
cannot constitute a stereotype, which is based on society's
general ideas about traits commonly thought to be shared by
persons of the same physical type.  Whatever Sirey's individual

---

[27]   See Pl.'s Substitute Reply to Def.'s Reply Mem.

ideas may have been about women's liberation and physical appearance, these do not constitute gender stereotypes, at least not as such stereotypes have been recognized among the circuits in sexual stereotyping harassment claims.  In fact, the feminine stereotype at issue in the seminal case of <u>Price Waterhouse v. Hopkins</u> involved the general belief that women should be meeker than men (i.e. not "liberated").  As a result, Love's stereotyping claim, to the extent it is even valid in the Fifth Circuit or properly pled, should be dismissed as a matter of law.

Further, Love's stereotyping claim does not fit the mold of cases in which the circuits have recognized same-sex sexual stereotyping harassment.  Love claims that Sirey stereotyped her for not acting like a woman, but makes no allegation that Sirey harassed her for acting *like a man*.  As noted above, all the circuit cases recognizing same-sex sexual stereotyping claims have involved harassment of men for having feminine traits or mannerisms, or women for having male traits or mannerisms.  Love makes no allegations that Sirey harassed her for having male traits or mannerisms.  As a result, Love's stereotyping claim fails as a matter of law.

### E.   Retaliation Claim under Title VII

Love alleges that Motiva retaliated against her after she made complaints about Sirey by giving her negative written feedback and disciplinary warnings.  Additionally, Love asserts

that Motiva retaliated by forcing her to take disability leave by removing her from Board Operator duty under a pretext of safety precautions, and then failing to find her another light duty position.  Motiva argues that Love has not made a prima facie showing of retaliation.

A retaliation claim under Title VII requires a prima facie showing that 1) plaintiff engaged in a Title VII protected activity ; 2) the plaintiff was subjected to adverse employment action; and 3) the adverse action was causally connected to the protected activity.  Lemaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 388 (citing Harvill, 433 F.3d at 439).

An adverse employment action is one that "a reasonable employee would have found . . . materially adverse." Burlington N. & Santa Fe R.R. Co. v. White, 548 U.S. 53, 68 (2006).  The "materially adverse" element requires a showing that the action at issue "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (internal quotations omitted).  This standard is objective, but "the significance of any given act of retaliation will often depend upon the particular circumstances" of the case at hand.  Id. at 69.

The "causal link" element can be shown in two ways: 1) direct evidence of retaliatory motive or 2) circumstantial evidence that creates a rebuttable presumption of retaliatory motive.  Thomas v. Atmos Energy Corp., 223 Fed. Appx. 369, 377

(5th Cir. 2007).   Under the circumstantial evidence approach, the
Fifth Circuit considers three factors in determining a prima
facie showing of causation: 1) the employee's past disciplinary
record; 2) whether the employer followed its standard procedures
in the challenged action; and 3) the temporal proximity between
the employee's protected conduct and the adverse action.   DeHart
v. Baker Hughes Oilfield Operations., Inc., 214 Fed. Appx. 437,
442 (5th Cir. 2007) (citing Nowlin v. Resolution Trust Corp., 33
F.3d 498, 508 (5th Cir. 1994).   Close timing between the
protected activity and adverse action may provide a causal link
for a prima facie showing.   Id.

     If plaintiff presents only circumstantial evidence in her
prima facie showing of retaliation, the McDonnell-Douglas burden-
shifting framework takes effect, and the defendant must meet the
burden of production to state a legitimate, non-retaliatory
reason for the employment action.   Thomas, 223 Fed. Appx. at 378.
If the defendant succeeds in this showing, the burden shifts back
to the plaintiff to prove that the protected activity was the
but-for cause of the adverse employment action.   Id.

     It is undisputed that Love engaged in protected activity
under Title VII both by filing an EEOC complaint, as well as by
filing internal complaints with Motiva.   See, e.g., Aryain v.
Wal-Mart Stores Tex., LP, 534 F.3d 473, 194 (5th Cir. 2008)
(noting that formal complaint with manager constituted Title VII

protected activity).  Nonetheless, Love must present proof of the other prima facie elements of a Title VII retaliation claim.

### 1) Adverse Employment Action

Love alleges two specific adverse employment actions taken by Motiva in response to her complaints about Sirey: a) negative remarks in her PDL and an "Oral Reminder" after the August 17th foaming incident; and b) pretextual removal from Board Operator duties due to allegedly false reports of her failure to respond to foaming incidents in the coker unit.  Motiva argues that the written remarks and Oral Reminder are not materially adverse employment actions, and that the removal from Board Operator duties was due to safety concerns.

### a) Negative Remarks and Oral Reminder

Love's claim with respect to the written remarks and Oral Reminder is foreclosed by the Fifth Circuit's decision in DeHart v. Baker Hughes Oilfield Operations, Inc. 214 Fed. Appx. 437 (5th Cir. 2007).  In DeHart, plaintiff alleged that a written warning for insubordination, argumentative behavior, and absenteeism constituted an adverse employment action sufficient to support a retaliation claim.  Id.  The Fifth Circuit upheld summary judgment of a retaliation claim, holding that a written warning did not constitute an adverse employment action because such a warning would not have "dissuaded a reasonable worker from making or supporting a charge of discrimination" under Burlington.  Id.

The court based its holding on the fact that 1) there were "colorable grounds" for the warning; 2) a reasonable employee would not have understood a warning in the circumstances to be retaliatory; and 3) the warning did not dissuade a discrimination charge because an EEOC charge was filed after the warning.  Id.

Similarly, the written remarks and Oral Reminder issued to Love in this case cannot constitute an adverse employment action for a Title VII retaliation claim.  First, the written negative remarks were merely coaching and counseling remarks and were not even part of the hierarchy of Motiva's disciplinary actions.[28] While Love attempts to suggest in her Opposition that some of the remarks in her PDL were backdated and withheld by Motiva, these issues are irrelevant in terms of the adverse action requirement of a Title VII claim.  If the official written warning in DeHart was insufficient to constitute adverse action, then the informal coaching remarks are not adverse, regardless of their date.  Thus even if Motiva withheld portions of Love's PDL, the issue is irrelevant because informal remarks cannot constitute adverse employment actions as a matter of law.  Finally, the Eastern District of Texas has held that informal comments in a personnel log, even if backdated *after* the plaintiff engaged in protected conduct, did not constitute and adverse employment action under

---

[28] See Def.'s Mem. Supp. Summ. J., Ex. 4.

<u>Burlington</u>.[29]  This Court finds the Eastern District of Texas's reasoning persuasive in this case, in addition to the Fifth Circuit's holding in <u>DeHart</u>.

Additionally, Motiva has presented competent summary judgment evidence in the form of affidavits by one of Love's supervisors as well as company records that show at least a colorable grounds for issuing the Oral Reminder to Love after her failure to properly respond to an alarm.[30]  While Love attempts to cast doubt on the computer-generated graphs that show her apparent fault in the foaming incident, the graphs constitute more than adequate grounds for a warning.  Additionally, the uncontested affidavit of Anthony Pastor, the engineering manager who supervised Love, notes that higher forms of discipline had been given for similar incidents.[31]  Thus just as in <u>DeHart</u>, the Oral Reminder was based on "colorable grounds."  Also, because higher levels of discipline had been given for similar incidents, a reasonable employee would not have considered the Oral Reminder retaliatory.[32]

---

[29]  <u>Beaumont v. Tex. Dep't of Crim. Justice</u>, 468 F. Supp. 2d 907, 929 (E.D. Tex. 2006).

[30]  See Def.'s Mem. Supp. Summ. J., Ex. 3.

[31]  Id.

[32]  The Court notes that Motiva's Memorandum in Support of Summary Judgment states that Love's EEOC complaint was filed *after* the Oral Reminder. Def.'s Mem. Supp. Summ. J., 21-22 n.123. However, according to Love's Opposition, the complaint was filed

### b)   Removal from Board Operator Position

Love also claims that her removal from the Board Operator position, in circumstances in which no other light duty was available to accomodate her medical conditions, constituted retaliation by Motiva for her complaints about Sirey.  Motiva argues that Love is still employed by Motiva, albeit on disability, and can come back to work as soon as she is cleared by her physicians.  Accordingly, Motiva asserts that Love cannot show an adverse employment action in her removal to meet the prima facie showing for a Title VII retaliation claim.

The Fifth Circuit has suggested that an employer's failure to provide alternative light-duty assignments to an employee with disability when no such assignments are available may not constitute an adverse employment action under Burlington and Title VII.  Ajao v. Bed Bath & Beyond Inc., 265 Fed. Appx. 258, 264 (2008).  In Ajao, plaintiff brought a retaliation claim based on defendant's "denial of his request for light-duty assignments to allow him to return to work" after he had injured his back and was under doctor's orders to not lift more than five pounds.  Id.

---

on August 25, 2007, which was *before* issuance of the Oral Reminder.  Pl.'s Mem. Opp. Summ. J., 19.  Curiously, though, Love's Complaint alleges that she received her right-to-sue letter on August 9, 2007, in which case her EEOC complaint pre-dated the Oral Reminder.  Regardless, the timing of the complaint is not crucial to the issue of material adversity given the other circumstances of the Oral Reminder, but nonetheless may tip the balance in favor of Motiva if Love's EEOC complaint followed the Oral Reminder.

at 261, 264.  Plaintiff and defendant both agreed that other
workers had received light-duty assignments for medical reasons.
Id.  Throughout the relevant period, plaintiff remained employed
by defendant but did not return to work.  Id at 261.  The Fifth
Circuit held that the record did not include sufficient facts to
determine whether the failure to provide a light-duty assignment
constituted a materially adverse employment action because it had
"little context by which to measure the challenged employment
action."  Id. at 265.  However, the court cast doubt on whether
the challenged action was materially adverse by noting that
plaintiff did not show that his circumstances were similar to
other employees who received light duty assignments and by
pointing out that plaintiff was still under lifting restrictions
from his doctor.  Id.

     Similarly, Love alleges that Motiva's failure to find an
alternative light-duty assignment after she was removed from the
Board Operator position constituted retaliation for her
complaints about Sirey.  Additionally, like the plaintiff in
Ajao, Love remains employed by Motiva and has not returned to
work.[33]  Moreover, like the plaintiff in Ajao, Love has not

---

     [33] Love testified at deposition that her doctor ordered that
she could not return to work in *any* capacity. Def.'s Mem. Supp.
Summ. J., Ex. 1 at 49-52. However, Love argues that her doctor's
statements are inadmissible hearsay evidence and thus should not
be considered as competent summary judgment evidence.  Pl.'s
Statement of Controverting Facts, ¶ 14.  Love's argument is
correct and thus the doctor's statements regarding her alleged

produced contextual evidence to allow the Court to make a determination as to whether a reasonable employee would find Motiva's decision not to assign her to other light-duty work materially adverse. As a result, material issues of fact exist as to whether Motiva's failure to find alternative light-duty work constituted a materially adverse employment action, and thus summary judgment on this point would be inappropriate.

### 2)   Causal Link between Adverse Action and Protected Activity

Regardless of whether any of Motiva's actions constituted a materially adverse employment action, Love must also show a causal link between the alleged adverse action and her complaints about Sirey. Motiva argues that Love has shown only an insufficient temporal link between her removal from the Board Operator position and her resulting disability leave.

Under DeHart, Love has failed to make a prima facie showing of a causal link between her complaints of Sirey's behavior and Motiva's alleged adverse employment action in failing to give her other light duty after she was removed from the Board Operator position. All three factors that the Fifth Circuit considers

---

complete disability should not be considered. Fed. R. Evid. 802 & 804 (2008); see also Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 564 (1996) (holding plaintiff's deposition testimony regarding his treating doctor's statements relating to the issue of his disability was hearsay and was not admissible under the Rule 803(4) "statements related to diasgnosis or treatment" exception to the hearsay rule).

under <u>DeHart</u> weigh against the finding of a prima facie causal link in this case.

First of all, the timing factor is not met because the alleged adverse action took place more than a year and a half after Love's first complaints about Sirey's behavior.[34]  While Love may attempt to argue that her filing an EEOC complaint was the protected activity that should be considered the triggering event in a timing inquiry, her official complaints to Motiva about Sirey were also protected activities.

Additionally, Motiva's summary judgment evidence shows that it followed its usual policies in dealing with Love's complaints and removing her from the Board Operator position.  In <u>DeHart</u> the court noted that the defendant followed up plaintiff's complaints of Title VII violations and provided plaintiff with warnings that she might be terminated if she did not produce medical authorization for her disability leave.  <u>DeHart</u>, 214 Fed. Appx. at 443.  Similarly, Motiva consistently responded to Love's complaints, as admitted by Love herself, despite her suspicions that the complaints were not followed up properly.  Also, Motiva gave Love an Oral Reminder before removing her from the Board Operator position *after a second safety incident*.

Finally, Love's PDL includes notations of instances in which

---

[34] See <u>DeHart</u>, 214 Fed. Appx. at 443 (noting several Fifth Circuit cases in which lapses of seven, three, ten, and five month lapses were insufficient to show a causal link).

she made errors in certain processes in the coker unit prior to
the foaming incidents.[35]  Thus Motiva's decision to remove Love
from the Board Operator position after two safety incidents was
not made without foundation.  Furthermore, to the extent that
Love claims Motiva did not produce her entire PDL, the entries
that do appear are unequivocal on the issue of errors by Love.
Additionally, to the extent Love alleges that certain entries
were backdated, these entries actually include some positive
comments, and do not include some of the pertinent negative
comments.  Thus the backdating is irrelevant to the issue of a
prima facie showing of a causal link.

Finally, even if Love has made a prima facie showing of a
causal link between the alleged adverse employment action and her
complaints about Sirey, Motiva has met the secondary McDonnell-
Douglas burden of showing a non-retaliatory reason for removing
Love from Board Operator duty due to safety concerns.
Additionally, Love has not met the final McDonnell-Douglas burden
of showing that her complaints about Sirey were the "but-for"
cause of her removal from the Board Operator position.  In fact,
Love's Opposition does not mention anything about her complaints
of Sirey's behavior in the context of her removal from Board duty
for the two alarm incidents.  The Opposition is mainly concerned
with casting doubt on whether Motiva's explanation of the two

---

[35]  See Def.'s Mem. Supp. Summ. J., Ex. 4.

37

alarm incidents that led to Love's removal is pretextual, without any reference at all to facts indicating that the removal was related to her complaints about Sirey.  In order to survive summary judgment on the third but-for step of the McDonnell Douglas framework, a "plaintiff must present evidence so that a jury could find that the employer . . . *lacks all credibility*." Staten v. New Palace Casino, LLC, 187 Fed. Appx. 350, 361 (5th Cir. 2006).  Love's attempts in her Opposition to show that Motiva's motive in removing her from the Board Operator position was pretextual do not meet this but-for standard.  Accordingly, Motiva's motion for summary judgment on Love's retaliation claim should be granted.

In sum, Love has failed to present a prima facie case of both same-sex sexual harassment and retaliation under Title VII. Accordingly,

**IT IS ORDERED** that Defendant Motiva's Motion for Summary Judgment (Rec. Doc. # 11) is hereby **GRANTED** as to all claims by Plaintiff Love.

New Orleans, Louisiana, this 16th day of September, 2008.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

38